LAW OFFICES OF

# JEFFREY LICHTMAN

441 LEXINGTON AVENUE

SUITE 504

NEW YORK, NEW YORK 10017

www.jeffreylichtman.com

JEFFREY LICHTMAN

JEFFREY EINHORN

MATTHEW COHAN

PH: (212) 581-1001

FX: (212) 581-4999

February 21, 2025

**BY ECF**
Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **United States v. Niloufar Bahadorifar**, 21 CR 430 (RA)

Dear Judge Abrams:

We write in response to the Court's order, dated today, requiring undersigned counsel to file their declarations in response to Ms. Bahadorifar's motion for post-conviction relief pursuant to 28 U.S.C. § 2255. To briefly explain, counsel emailed non-redacted copies of the declarations at issue to both the government and Ms. Bahadorifar's attorney on February 14, 2025. Redacted copies of both are attached hereto.

We apologize to the Court and misunderstood that our declarations were to be filed on ECF and not merely provided to the parties.

Respectfully submitted,

Jeffrey Lichtman
Jeffrey Einhorn

Encs.

cc:    Jacob Gutwillig, Esq.
       Assistant United States Attorney (by ECF)

       Chris Jensen, Esq. (by ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

         -against-                         **DECLARATION**

NILOUFAR BAHADORIFAR,             **21-CR-430 (RA)**

            Defendant.

-------------------------------------------------------------------X

     **JEFFREY LICHTMAN**, an attorney admitted to practice before this Court, declares the following under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

INTRODUCTION

     1.     I am the principal of the Law Offices of Jeffrey Lichtman, located at 441 Lexington Avenue, Suite 504, New York, New York 10017.

     2.     Together with Jeffrey Einhorn, Esq., I represented Petitioner Niloufar Bahadorifar in the above-captioned criminal case in the Southern District of New York.

     3.     In August 2021, Ms. Bahadorifar retained my law firm to represent her with regard to charges that she conspired to violate the International Emergency Economic Powers Act, conspired to commit bank and wire fraud, conspired to commit money laundering, and structured financial transactions to evade reporting requirements.  This involved allegations that Ms. Bahadorifar provided financial services to the government of Iran in violation of economic sanctions against that country.

     4.     On December 15, 2022, Ms. Bahadorifar pleaded guilty to Counts Two and Five of the Superseding Indictment pursuant to a plea agreement, which charged her with conspiracy to violate the International Emergency Economic Powers Act (Count Two); and structuring

financial transactions (Count Five). On April 7, 2023, the Hon. Ronnie Abrams sentenced Ms.

Bahadorifar to 48 months imprisonment. Ms. Bahadorifar subsequently filed and withdrew an

appeal, and thereafter, filed a motion to set aside her conviction pursuant to 28 U.S.C. § 2255

(the "Petition").

5.      On September 11, 2024, the Court ordered that both Jeffrey Einhorn and I provide

the government with our responses to Ms. Bahadorifar's allegations of ineffective assistance of

counsel contained in the Petition in order for the government to respond thereto. Subsequently,

Ms. Bahadorifar executed a waiver releasing counsel from the attorney-client privilege.

RESPONSE TO MS. BAHADORIFAR'S PETITION

6.      In August 2021, Ms. Bahadorifar retained my law firm to represent her against

charges of that she conspired to violate the International Emergency Economic Powers Act,

conspired to commit bank and wire fraud, conspired to commit money laundering, and structured

financial transactions to evade reporting requirements. Generally, this involved allegations, *inter

alia*, that Ms. Bahadorifar was providing financial services to the government of Iran and

violated economic sanctions placed against that country.

7.      I repeatedly informed Ms. Bahadorifar that she faced significant jail time as a

result of the charges, and told her that I would try my best for her to minimize or avoid an

incarcerative sentence. I also discussed the sentencing guidelines multiple times with Ms.

Bahadorifar – from initial estimates prepared by my office to the government's calculation in her

plea agreement – as well as her statutory minimum and maximum sentence.

8.      Throughout the case, Ms. Bahadorifar was concerned that she would be sentenced

to a term of incarceration for her crimes and she became hysterical during calls on multiple

2

occasions wherein she would have outbursts and emotionally proclaim that she did nothing wrong. These outbursts were then contradicted by her own admissions during other calls, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ also frequently needed to remind Ms. Bahadorifar multiple times how serious this case was – it involved the attempted kidnapping of a political activist.

9.    Ms. Bahadorifar repeatedly explained that she simply could not go to prison. I made clear to her that the only way she could likely avoid prison would be to go to trial and be acquitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10.    In ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮

11.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

12. 

13.

14.     On November 15, 2022, the government arranged for a call with Mr. Einhorn and me to discuss a potential plea agreement. Their offer required Ms. Bahadorifar to plead guilty to Counts Two and Five of the Superseding Indictment, with a potential maximum sentence of 30

years imprisonment and sentencing guidelines of 46 to 57 months. The government asked if such an offer would be acceptable to the defendant prior to distilling it to writing.

15. After personally discussing the matter with Ms. Bahadorifar, including her potential sentencing guidelines and statutory maximum sentence, Ms. Bahadorifar indicated that she would accept an offer that contained those terms. I did not, as the Petition falsely claims, tell Ms. Bahadorifar that she was a "level 23," and then not explain what that meant. Petition at p. 14.

16. On November 30, 2022, the government emailed Mr. Einhorn and me a plea agreement that contained the previously agreed to terms. I asked Mr. Einhorn to forward the plea agreement to Ms. Bahadorifar for a call I was to have with her the following night. During that call, I again explained the plea agreement and the import of her sentencing guidelines. Contrary to the assertions of Ms. Bahadorifar's attorney, I specifically explained that her advisory sentencing guidelines in the agreement were 46-57 months imprisonment. See Petition at p. 14.

17. At no time did I indicate to Ms. Bahadorifar that I had an "oral agreement with the government that she would not go to prison." Petition at p. 14. Instead as a December 5, 2022 text message exchange between me and Ms. Bahadorifar makes clear, I told her prior to her guilty plea that "the judge may or may not give you jail time." See December 5, 2022 Text Messages, attached as Exhibit A (emphasis supplied). When Ms. Bahadorifar followed by asking "[b]ut you think [I] have a good chance to avoid [] jail," I replied: "Yes. Decent chance." Id. (emphasis supplied). Clearly, I made no promises that Ms. Bahadorifar would avoid jail and did not induce her to plead guilty based on such a promise. Instead, I honestly believed, as I texted her, that she had a "[d]ecent chance." Id. My belief was based upon the following; █

5

███████████████████████████████████████████████████████

███████████████████████████████████████████; the threats she had

received since her arrest on these charges was publicized; the violent threats her sister and her

family had experienced in Iran; and the fact that she was the least culpable defendant in the case

by far and the only defendant who had been arrested. This text exchange was one of may

communications I had with Ms. Bahadorifar in which I indicated she could receive a prison

sentence.

18.     Ms. Bahadorifar's change of plea hearing occurred on December 15, 2022.  Under

oath, Ms. Bahadorifar indicated that she had enough time to discuss the case with counsel,

including the nature of the charges to which she intended to plead guilty that day. See Transcript

of Guilty Plea ("Guilty Plea"), United States v. Bahadorifar, 21 CR 430, ECF No. 48, at T4.

During her change of plea hearing, the Court confirmed that Ms. Bahadorifar was aware of the

statutory maximum of 30 years imprisonment (T 11-13), and that she understood her advisory

sentencing guidelines as calculated by the government and restated in her plea agreement were

46-57 months imprisonment. T 14-17. The Court further explained to Ms. Bahadorifar the

impact of her sentencing guidelines as calculated in the plea agreement. T 17. All of this

comports with my prior discussions with Ms. Bahadorifar about the potential sentence that she

faced.

19.     In addition to the sentencing guidelines, at Ms. Bahadorifar's change of plea

hearing, the Court confirmed that she was not offered any inducements to plead guilty outside of

the plea agreement, or that there were any promises as to what her sentence would be.  T 19.

Again, this comports with my prior discussions with Ms. Bahadorifar about her range of

6

punishments. Finally, Ms. Bahadorifar agreed that any prediction of her sentence by anyone could be wrong. Id.

20.     Even after Ms. Bahadorifar's change of plea hearing, my text messages with her reflect that I always indicated that she might be sentenced to a term of imprisonment. For example, on March 7, 2023, Ms. Bahadorifar texted me: "Promise me Jeffery (sic) you save me and take me out of this nightmare." See March 7, 2023 Text Messages, attached as Exhibit B. I responded: "I'm going to do my best," to which she said "[m]eans there is chance to send me to jail[?]" Id. I replied: "Always had been." Id. Ms. Bahadorifar did not, as her Petition might lead the Court to believe, respond with "you promised me no jail!" Instead, she asked to speak the next day. Id.

CONCLUSION

21.     Ms. Bahadorifar's Petition is baseless. As the Court confirmed during her change of plea hearing, there were no secret promises to keep her out of prison (Petition at p. 14) and at no time did I promise that she would avoid jail. She was also well aware of her sentencing guidelines. Further, as the text messages establish, I told her that I believed she had a chance to avoid jail – and I believed at the time that she did, both before and after she pleaded guilty.


Dated:          New York, New York
                February 12, 2025


                                                    JEFFREY LICHTMAN

7

# EXHIBIT A

9:55 🔇                          ⏸ 📶 ⏺ 70

<❸    **Niloufar Bahadori...** >    ◻

Dec 5, 2022 at 11:13 AM

Good morning **Jeffrey** , i
guess 14 is court day....
Are they let me go back or
they keep me???? 😭 😭

You'll be going back. For
the plea.

You mean because I
accept the Plea they let
me go back? No jail

Until sentencing

What is that?

Then the judge may or
may not give you jail time

But you think i have good
chance to avoid a jail

Yes. Decent chance.

+    iMessage                     🎤

# EXHIBIT B

9:57



Niloufar Bahadori... >

I am scared to death

I think there's a very good chance you avoid jail.

Promise me Jeffery you save me and take me out of this nightmare

Please

I'm going to do my best

Means there is chance to send me into jail

Always has been

Can we talk tomorrow

Yes

Ok after my son leaves i will call you

Have a good evening

+    iMessage

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

          -against-                            **DECLARATION**

NILOUFAR BAHADORIFAR,                   **21-CR-430 (RA)**

              Defendant.

------------------------------------------------------------------X

     **JEFFREY EINHORN**, an attorney admitted to practice before this Court, declares the following under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

     INTRODUCTION

     1.     I am a partner at the Law Offices of Jeffrey Lichtman, located at 441 Lexington Avenue, Suite 504, New York, New York 10017.

     2.     Together with Jeffrey Lichtman, Esq., I represented Petitioner Niloufar Bahadorifar in the above-captioned criminal case in the Southern District of New York.

     3.     In August 2021, Ms. Bahadorifar retained my law firm to represent her with regard to charges that she conspired to violate the International Emergency Economic Powers Act, conspired to commit bank and wire fraud, conspired to commit money laundering, and structured financial transactions to evade reporting requirements. Generally, this involved allegations that Ms. Bahadorifar provided financial services to the government of Iran in violation of economic sanctions against that country.

     4.     On December 15, 2022, Ms. Bahadorifar pleaded guilty to Counts Two and Five of the Superseding Indictment pursuant to a plea agreement, which charged her with conspiracy to violate the International Emergency Economic Powers Act (Count Two); and structuring

financial transactions (Count Five). On April 7, 2023, the Hon. Ronnie Abrams sentenced Ms.

Bahadorifar to 48 months imprisonment. Ms. Bahadorifar subsequently filed and withdrew an

appeal, and thereafter, filed a motion to set aside her conviction pursuant to 28 U.S.C. § 2255

(the "Petition").

     5.    On September 11, 2024, the Court ordered that both Jeffrey Lichtman and I

provide the government with our responses to Ms. Bahadorifar's allegations of ineffective

assistance of counsel contained in the Petition in order for the government to respond thereto.

Subsequently, Ms. Bahadorifar executed a waiver releasing counsel from the attorney-client

privilege.

<u>RESPONSE TO MS. BAHADORIFAR'S PETITION</u>

     6.    In August 2021, Ms. Bahadorifar retained my law firm to represent her against

charges that she conspired to violate the International Emergency Economic Powers Act,

conspired to commit bank and wire fraud, conspired to commit money laundering, and structured

financial transactions to evade reporting requirements. Generally, this involved allegations, *inter

alia*, that Ms. Bahadorifar was providing financial services to the government of Iran and

violated economic sanctions placed against that country.

     7.    Throughout the case, Ms. Bahadorifar was concerned that she could be sentenced

to a term of incarceration for her crimes. Repeatedly, I informed her that she faced significant

jail time as a result of the charges, and informed her that we would do our best to minimize or

avoid jail time. I never made any promises to her with regard to her sentence and never promised

her that if she pleaded guilty that she would avoid jail entirely. These discussions occurred

several times, both over the telephone and in person.

2

8.     On October 15, 2021, co-counsel Jeffrey Lichtman and I appeared via video on behalf of Ms. Bahadorifar for her arraignment in this case. Ms. Bahadorifar also appeared virtually for that appearance.

9.     In late November and early December 2021, Ms. Bahadorifar requested a modification of her bail conditions in order to visit her sister. I communicated over the telephone directly with Ms. Bahadorifar in order to ascertain the details for this application.

10.     On February 4, 2022, I appeared with co-counsel Jeffrey Lichtman via video for a status conference on behalf of Ms. Bahadorifar, who also appeared virtually.

11.     By this time, I had spoken directly with Ms. Bahadorifar on a number of occasions about her case, the severity of the charges, and her questions concerning her conditions of pretrial release.

12.     On February 28, 2022, Ms. Bahadorifar flew from California to my office to review discovery that was covered by a protective order. I reviewed this material with Ms. Bahadorifar in my conference room, answered her questions, and discussed how the evidence that she reviewed corroborated the government's allegations. As she examined the materials, Ms. Bahadorifar also noted portions of the evidence or the government's interpretation thereof with which she did not agree. We discussed these issues as well. Having arranged for this meeting with Ms. Bahadorifar, together with the assistance of my office manager, Ms. Bahadorifar did not appear to be surprised by my involvement in the case, and it would be nonsensical that she would have been introduced to me at that time in light of our multiple prior discussions, contrary to the allegations in her Petition. See Petition at p. 14. While Ms. Bahadorifar claims that this meeting took place in May 2022, a review of emails indicates that

3

this date is incorrect, regardless, she was not introduced to me on the date of her discovery review.

13.　　Following this meeting, I continued to discuss Ms. Bahadorifar's case with her over the telephone, including the potential maximum sentence that she faced if she were to take her case to trial and lose. I also forwarded her certain materials that were not covered by the protective order for her review and interpretation. For example, in April 2022, I emailed Ms. Bahadorifar a transcript of her interview with law enforcement following her arrest.



14.

15.

16.



17.

18.    On November 15, 2022, the government arranged for a call with Jeffrey Lichtman and me to discuss a potential plea offer that had not yet been distilled to writing. That offer required Ms. Bahadorifar to plead guilty to Counts Two and Five of the Superseding Indictment, with a potential maximum sentence of 30 years imprisonment and sentencing guidelines of 46 to 57 months. The government asked if such an offer would be acceptable to the defendant prior to distilling it to writing.

19.    After discussing the matter with Ms. Bahadorifar, including her potential sentencing guidelines and statutory maximum sentence, which I am informed Jeffrey Lichtman did as well, Ms. Bahadorifar indicated that she would accept an offer within those parameters. On November 29, 2022, I informed the government of such and the following day, the government emailed Jeffrey Lichtman and me a plea agreement that contained the previously

agreed to terms. That same day, I arranged a call with Ms. Bahadorifar to review her plea agreement with Jeffrey Lichtman over a conference call for the following night.

20.    On December 2, 2022, I emailed Ms. Bahadorifar a copy of the plea agreement, noting that it was in advance of her call that night. That call took place between Ms. Bahadorifar and Mr. Lichtman directly. On December 12, 2022, a copy of the plea agreement executed by Ms. Bahadorifar was forwarded to the government.

21.    Ms. Bahadorifar's change of plea hearing occurred on December 15, 2022. Under oath, Ms. Bahadorifar indicated that she had enough time to discuss the case with counsel, including the nature of the charges to which she intended to plead guilty that day. See Transcript of Guilty Plea ("Guilty Plea"), United States v. Bahadorifar, 21 CR 430, ECF No. 48, at T4. It is my firm belief based on my discussions with her that she fully understood the potential penalties that she faced.

22.    During her change of plea hearing, the Court confirmed that Ms. Bahadorifar was aware of the statutory maximum of 30 years imprisonment. T 11-13. The Court also confirmed that she understood that her advisory sentencing guidelines as calculated by the government and restated in her plea agreement were 46-57 months imprisonment. T 14-17. The Court further explained to Ms. Bahadorifar the impact of her sentencing guidelines as calculated in the plea agreement. T 17. All of this comports with my prior discussions with Ms. Bahadorifar about the sentence that she faced. Further, while I told her I hoped for non-incarcerative sentence, I always confirmed that it was up to the judge and that her guidelines would make it difficult, but not impossible to get this result.

6

23.    At Ms. Bahadorifar's change of plea hearing, the Court also confirmed that she was not offered any inducements to plead guilty outside of her plea agreement, and that there were not any promises as to her sentence would be. T 19. Again, this comports with my prior discussions with Ms. Bahadorifar about her range of punishments. Finally, Ms. Bahadorifar agreed that any prediction of her sentence by anyone could be wrong. Id.

CONCLUSION

24.    I have reviewed Ms. Bahadorifar's Petition and disagree with multiple claims made by her attorney. First, I was not introduced to Ms. Bahadorifar on the date that she flew in from California to review her discovery. We had spoken multiple times beforehand. I was also not disinterested in her thoughts during this discovery review, and participated in multiple lengthy discussions with her about the merits of the government's case and how it was corroborated by the discovery that had been provided. See Petition at p. 14.

25.    I also disagree with Ms. Bahadorifar's claims, through her attorney, that in all meetings she professed her innocence. Id. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

7

26.    Finally, I never assured or promised Ms. Bahadorifar that she would avoid jail if she pleaded guilty – or that she would get all of her jewelry returned to her.  To the contrary, we discussed the statutory minimum and maximum terms of imprisonment that she faced, as well as the sentencing guidelines that the government had calculated in her plea agreement – all prior to her pleading guilty on December 15, 2022.

Dated:  New York, New York
        February 12, 2025

                                                    _____
                                                    JEFFREY EINHORN

8